John Michael **FITZGERALD**, Appellant,

v.

**COMMISSIONER OF PUBLIC SAFETY**, Respondent.

No. C6–84–710.

Court of Appeals of Minnesota.

Oct. 30, 1984.

Barbara J. Runchey, Runchey, Louwagie & Wellman, Marshall, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Ann LaBree Russell, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by FOLEY, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

On June 11, 1983, appellant refused to submit to a test to determine his blood alcohol content. The implied consent advisory had been read to him following a minor automobile accident. On January 25, 1984, appellant received notice that his driver's license had been revoked for six months as a result of his refusal. Appellant demanded a hearing. The trial court sustained the revocation, but made the six months revocation retroactive to the time of the refusal, and Fitzgerald appealed. We affirm.

## FACTS

On June 11, 1983, deputy sheriff Michael MacCormick received a complaint that a vehicle had driven up on the complainant's lawn. At the scene, MacCormick found the driver slumped over the steering wheel drunk. The vehicle was not running. MacCormick took the uninjured driver to the hospital for a blood test, but the driver refused the test after the implied consent advisory was read to him.

At the implied consent hearing, MacCormick did not claim that he asked the driver for a driver's license or otherwise identified him. The way MacCormick testified to Fitzgerald's identity as the driver was in the following exchange:

Q: [On June 17th] did you have occasion to meet the petitioner in this matter, Mr. Fitzgerald?

A: Yes, I did.

Q: Can you tell us what first directed your attention to Mr. Fitzgerald?

A: I received a call from my dispatcher * * * there was a party slumped at the wheel.

The "party" slumped at the wheel was never technically identified as Fitzgerald except by implication. MacCormick did refer to the party as "Mr. Fitzgerald" several times during his testimony, however, without eliciting any objections from appellant's counsel.

Fitzgerald did not receive notice of the revocation of his driver's license until January 25, 1984, more than seven months after the offense. To remedy any prejudice Fitzgerald may have suffered because of the delay, the court made the six months revocation retroactive to the time of the offense so that, by the time the court's order sustaining the revocation was issued, that revocation had expired.

## ISSUES

1. Did the trial court err in finding that the arresting officer established Fitzgerald as the driver of the car on the complainant's lawn?

2. Was the delay in revoking Fitzgerald's driver's license a denial of due process warranting recission of the revocation?

## ANALYSIS

1. This is a civil case under the implied consent statute, not a criminal case under the DWI statute. We will therefore not disturb the trial court's findings of fact unless we find them clearly erroneous, viewing the evidence in the light most favorable to the prevailing party. Rule 52.-01, Minn.R.Civ.P.. Given Officer MacCormick's repeated references to the person who refused the blood test as "Mr. Fitzgerald," without objection, appellant's failure to raise the question of identification at the trial court level, and the absence of any alibi defense, the failure of the Commissioner's attorney to have MacCormick specifically identify Fitzgerald did not make the court's finding that identification had been established "clearly erroneous."

2. The implied consent law provides that "a peace officer offering a chemical test * * * shall serve immediate notice of intention to revoke and of revocation on a person who refuses to permit chemical testing * * *." Minn.Stat. § 169.123, subd. 5a (1982). Appellant contends the Commissioner's failure to serve a revocation notice upon him until seven months after the incident precluded him from effectively contesting the revocation and therefore denied him due process. The trial court found that any denial of due process could be cured by making the revocation retroactive to the time of the incident. (While that meant this particular revocation was not in effect when Fitzgerald left the hearing, it did not mean Fitzgerald could drive away from the hearing. For unrelated prior offenses, Fitzgerald was under revocation at the time the June 17 incident took place and his license has been continuously in the custody of the Department of Public Safety since 1978.)

Appellant contends the Commissioner's delay in serving him with notice of revocation resulted in denial of due process in that, because of the delay, memories of the June 17 incident grew dim and witnesses in his favor could not be found. He does not, however, give any concrete examples of how the passage of time prejudiced his case. He cites no witnesses he could have called, nor, at the revocation hearing, did he point out any aspects of the arresting officer's testimony that were inaccurate. Since the officer was the only witness to testify at the hearing, and since the officer had no trouble remembering the events of June 17 (aided by his report), it was not shown that the delay had a significant impact on the outcome of the revocation hearing. In order to demonstrate that delay worked a denial of due process, appellant must show both actual prejudice and improper state purpose. *U.S. v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). Fitzgerald failed to demonstrate any actual prejudice, especially in light of the court's order that the revocation run from the date of the offense, not the date of the notice. This had the effect of minimizing any punishment except for his lengthy driving record which now contains one more listed offense. Even if the court had not made the revocation retroactive, and Fitzgerald had an active license, therefore meaning that he would suffer an actual loss of driving privileges, the record still does not show he met his burden imposed by *Lovasco*.

As a practical matter, Fitzgerald was advised by the arresting officer on June 17, 1983, that if he refused to submit to a test to determine his blood alcohol content, his right to drive would be revoked for six months from that date. It was. Any prejudice he suffered as a result of the delay in the sending of the revocation notice was cured by making the revocation retroactive.

## DECISION

Affirmed.